UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| XPO LAST MILE, INC., XPO LOGISTICS FRIEGHT, INC., XPO LOGISTICS SUPPLY CHAIN, INC. and XPO LOGISTICS WORLDWIDE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NUALLIANCE INSURANCE GROUP, LLC, NAUTILUS INSURANCE COMPANY, and ARBELLA PROTECTION,<br><br>Defendants<br><br>and<br><br>ELLEN KENNEDY, individually and in her capacity of Personal Representative of the ESTATE OF GABRIELLE KENNEDY, DSD VANOMOS, INC., RENE AMILCAR ROMERO, and AMAZON.COM SERVICES, LLC<br><br>Parties-In-Interest | CASE NO._____ |

**COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT**

NOW COMES Plaintiff XPO Last Mile, Inc., XPO Logistics Freight, Inc., XPO Logistics Supply Chain, Inc. and XPO Logistics Worldwide, Inc., by and through counsel, Norman, Hanson & DeTroy, LLC, and states the following in support of its Complaint and request for Declaratory Judgment.

**PARTIES**

1. Plaintiff XPO Last Mile, Inc. is a Georgia corporation registered to do business in the State of Maine.

1

2. Plaintiff XPO Logistics Freight, Inc. is a Delaware corporation registered to do business in the State of Maine.

3. Plaintiff XPO Logistics Supply Chain, Inc. is a North Carolina corporation registered to do business in the State of Maine.

4. Plaintiff XPO Logistics Worldwide, Inc. is a Delaware corporation registered to do business in the State of Maine.

5. Defendant NuAlliance Insurance Group, LLC, ("NuAlliance") is a Massachusetts limited liability company authorized to conduct business in the Commonwealth of Massachusetts.

6. Defendant Nautilus Insurance Company ("Nautilus") is an Arizona insurance company authorized to conduct business in the Commonwealth of Massachusetts.

7. Defendant Arbella Protection Insurance Company, Inc. ("Arbella") is a Massachusetts insurance company authorized to conduct business in the Commonwealth of Massachusetts.

8. Party-In-Interest Ellen Kennedy is an individual who resides in Rochester, New Hampshire and who was appointed as personal representative of the Estate of Gabrielle Kennedy ("Kennedy").

9. Party-In-Interest DSD Vanomos, Inc. ("DSD") is a Massachusetts corporation that, at all times relevant, was doing business in the State of Maine as a transportation company.

10. Party-In-Interest Rene Amilcar Romero ("Romero") is an individual who, upon information and belief, resides in Lynn, Massachusetts, and who at all times relevant was an agent of DSD Vanomos acting within the course and scope of his employment as a truck driver.

11. Party-In-Interest Amazon.com Services, LLC, ("Amazon"), is a Delaware limited liability company doing business in Maine.

## JURISDICTION & VENUE

12. The Court's jurisdiction is based upon the provisions of 28 USC §1332(a) inasmuch as this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum in value of $75,000.00.

13. Venue is properly laid in the District of Maine pursuant to 28 USC §1391(a), (b) and (c).

## GENERAL FACTUAL ALLEGATIONS

14. This matter arises out of litigation pending in the State of Maine, York County Superior Court, Docket No. CV-2020-208, <u>Ellen Kennedy, individually and in her capacity of Personal Representative of the Estate of Gabrielle Kennedy v. XPO Last Mile, Inc., XPO Logistics Freight, Inc., XPO Logistics Supply Chain, Inc., XPO Logistics Worldwide, Inc. and Amazon.com Services, LLC</u> (the "underlying litigation").  See Plaintiff's Amended Complaint, attached hereto as **Exhibit A**.

15. The underlying litigation alleges that on January 10, 2019, there was an automobile accident in Waterboro, Maine involving Kennedy (the "automobile accident").

16. The underlying litigation alleges that Romero was driving a box truck leased to DSD when he rear ended the vehicle occupied by Kennedy.

17. In the underlying litigation, Kennedy seeks the recovery of damages as a result of the automobile accident from the named Defendants.

18. The underlying litigation alleges that Romero was an employee of DSD at the time of the automobile accident.

19. The underlying litigation alleges that DSD was a subcontractor for and/or agent of XPO Last Mile, Inc., XPO Logistics Freight, Inc., XPO Logistics Supply Chain, Inc., XPO Logistics Worldwide, Inc. (hereafter collectively "XPO") and Amazon.com Services, LLC.

20. The underlying litigation includes a count against XPO for negligence in selection of contractor, Count I, and a count against Amazon for negligence in selection of contractor, Count II.

21. It is alleged that Kennedy sustained injuries as a result of the accident and witnessing the death of her daughter Gabrielle Kennedy.

22. Prior to the automobile accident, XPO and DSD entered into a Motor Carrier Transportation Agreement (the "Agreement"), a copy of which is attached hereto as **Exhibit B**.

23. Included in the Agreement was section 7. Insurance, which required, among other things, DSD to procure and maintain in force throughout the duration of the Agreement, Commercial General Liability insurance in an amount of $1,000,000 per occurrence and Automobile Liability Insurance in amounts not less than $1,000,000 per accident naming XPO as an additional insured on both the Commercial General Liability and Automobile Liability Insurance.

24. Included in the Agreement was section 8. Indemnity, which required, among other things, DSD to defend, indemnify and hold harmless XPO, its customers, agents, employees, and affiliates against any and all settlements, losses, damages, costs, counsel fees and all other expenses relating to or arising from any and all claims of every nature or character asserted against XPO.

25. At the time of the automobile accident, Nautilus issued to DSD a commercial general liability insurance policy, policy number NN955921 (the "Nautilus policy").

26. At the time of the automobile accident, Arbella issued to DSD an auto liability policy, policy number 1020075293 (the "Arbella policy").

27. Both the Nautilus policy and Arbella policy were purchased by DSD from NuAlliance.

28. NuAlliance acted as the agent for Nautilus and Arbella in marketing and selling the respective insurance policies to DSD.

29. XPO tendered the defense of the underlying litigation to DSD and DSD's liability insurers, including Arbella and Nautilus.

30. To date, Arbella and Nautilus have not provided defense and indemnification to XPO in the underlying litigation despite XPO's request to do so.

31. On August 14, 2018, pursuant to the Agreement between XPO and DSD and prior to the automobile accident, NuAlliance issued a Certificate of Liability Insurance, attached hereto as **Exhibit C**, naming XPO, its affiliates and all customers as an additional insured on both the Nautilus policy and Arbella policy.

32. When NuAlliance issued the Certificate of Liability Insurance it was acting as the agent of Nautilus and Arbella, with authority, apparent or actual, to bind the insurers.

33. When NuAlliance issued the Certificate of Liability Insurance Nautilus and Arbella were aware of NuAlliance's practice of issuing Certificates of Liability Insurance.

34. When NuAlliance issued the Certificate of Liability Insurance it was signed by Michael Flood an authorized representative.

35. Despite being named as an additional insured on both the Nautilus policy and Arbella policy and despite XPO's tendering of defense to DSD and its insurers, no one has agreed to defend and indemnify XPO and/or Amazon against the underlying litigation.

36. XPO has been advised that despite the Certificate of Liability Insurance issued by NuAlliance naming XPO, its affiliates and all customers as an additional insured, XPO, its affiliates and all customers were never actually added as a named additional insured on the

Arbella policy and/or there was never an endorsement to the Arbella policy added that would give XPO, its affiliates and all customers automatic additional insured status.

37. As of the filing of the present matter, it is unknown if Nautilus contends that XPO, its affiliates and all customers were never actually added as a named additional insured on the Nautilus policy and/or there was never an endorsement to the Nautilus policy added that would give XPO, its affiliates and all customers automatic additional insured status, but Nautilus has not provided defense and indemnification.

38. XPO relied on the representations made in the Certificate of Liability Insurance issued by NuAlliance to its detriment

## COUNT I
**(Negligent Misrepresentation – NuAlliance, Arbella and Nautilus)**

39. XPO repeats, reiterates and realleges each and every allegation set forth in the preceding Paragraphs and incorporates the same by reference.

40. Pursuant to the Agreement between XPO and DSD, DSD was required to provide proof that XPO had been named as an additional insured on the aforesaid insurance policies.

41. NuAlliance was requested by DSD to add XPO as an additional insured to the Arbella policy and Nautilus policy.

42. NuAlliance was aware that DSD was required to add XPO as an additional insured to the Arbella policy and Nautilus policy pursuant to the Agreement.

43. Pursuant to the Agreement between XPO and DSD, NuAlliance issued a Certificate of Liability Insurance to the Certificate Holder – XPO, identifying XPO, its affiliates and all customers as an additional insured on both the Arbella policy and Nautilus policy.

44. NuAlliance's identification of XPO, its affiliates and all customers as an additional insured on the Certificate of Liability Insurance was a material fact intended to induce XPO to act, and which did induce XPO to act, i.e., to engage in business with DSD

45. When NuAlliance identified XPO, its affiliates and all customers as an additional insured on the Certificate of Liability Insurance it did so as an agent with apparent or actual authority to bind its principals, Arbella and Nautilus.In NuAlliance's identification of XPO, its affiliates and all customers as an additional insured on the Certificate of Liability Insurance it negligently misrepresented a false material fact to XPO.

46. XPO justifiably relied on the representations made by NuAlliance in issuing the Certificate of Liability Insurance to its detriment.

47. NuAlliance knew or should have known that XPO would rely on the representations made by NuAlliance in the Certificate of Liability Insurance.

48. Arbella was aware that NuAlliance issued Certificates of Liability Insurance on its policies and allowed the practice to continue.

49. Arbella is liable for the actions of its agent NuAlliance in failing to procure additional insured status for XPO, its affiliates and all customers on the Arbella policy and negligently misrepresenting that XPO, its affiliates and all customers were an additional insured on the Arbella policy.

50. Nautilus was aware that NuAlliance issued Certificates of Liability Insurance on its policies and allowed the practice to continue.

51. Nautilus is liable for the actions of its agent NuAlliance in failing to procure additional insured status for XPO, its affiliates and all customers on the Nautilus policy and negligently

misrepresenting that XPO, its affiliates and all customers were an additional insured on the Arbella policy.

WHEREFORE, XPO respectfully asks that this Court enter judgment in its favor against NuAlliance, Arbella and Nautilus in an amount sufficient to compensate XPO fairly and reasonably for all damages, plus interest, costs and attorneys' fees, and such other relief and remedies as may be appropriate under the circumstances.

## COUNT II
### (Breach of Contract – NuAlliance)

52. XPO repeats, reiterates and realleges each and every allegation set forth in the preceding Paragraphs and incorporates the same by reference.

53. DSD and NuAlliance had an agreement whereby DSD would purchase insurance from or through NuAlliance, including, but not limited to, the Arbella and Nautilus policies.

54. XPO was an intended third-party beneficiary to the agreement between DSD and NuAlliance.

55. NuAlliance breached the agreement by failing to procure additional insured coverage for XPO, its affiliates and all customers on the Arbella policy and Nautilus policy.

56. XPO has been damaged by NuAlliance's breach, including, but not limited to, incurring defense costs and potential liability in the underlying litigation and the costs of prosecuting the present litigation.

WHEREFORE, XPO respectfully asks that this Court enter judgment in its favor against NuAlliance in an amount sufficient to compensate XPO fairly and reasonably for all damages, plus interest, costs and attorneys' fees, and such other relief and remedies as may be appropriate under the circumstances.

## COUNT III
### (Breach of Contract/Declaratory Judgment – Arbella and Nautilus)

57. XPO repeats, reiterates and realleges each and every allegation set forth in the preceding Paragraphs and incorporates the same by reference.

58. Arbella breached the Arbella policy in that it has refused to defend and indemnify XPO, its affiliates and all customers in the underlying litigation and forced XPO to assume its own defense in the underlying litigation.

59. Nautilus breached the Nautilus policy in that it has refused to defend and indemnify XPO, its affiliates and all customers in the underlying litigation and forced XPO to assume its own defense in the underlying litigation.

60. The breaches of Arbella and Nautilus, caused damage to XPO and continues to cause damage to XPO, to include, but without limitation, incurring defense costs and potential liability in the underlying litigation and the costs of prosecuting the present litigation.

61. XPO seeks a declaration from the Court that:

    a. Arbella breached the Arbella policy by failing to defend and indemnify XPO, its affiliates and all customers;

    b. Arbella owes XPO, its affiliates and all customers a duty to defend in the underlying litigation;

    c. Arbella is obligated to reimburse XPO, its affiliates and all customers for defense costs incurred defending against the underlying litigation and for the costs of prosecuting the present litigation;

    d. Arbella has a duty to indemnify XPO, its affiliates and all customers for any judgment entered against XPO, its affiliates and all customers in the underlying litigation;

9

   e. Nautilus breached the Nautilus policy by failing to defend and indemnify XPO, its affiliates and all customers;

   f. Nautilus owes XPO, its affiliates and all customers a duty to defend in the underlying litigation;

   g. Nautilus is obligated to reimburse XPO, its affiliates and all customers for defense costs incurred defending against the underlying litigation and for the costs of prosecuting the present litigation; and

   h. Nautilus has a duty to indemnify XPO, its affiliates and all customers for any judgment entered against XPO, its affiliates and all customers in the underlying litigation.

WHEREFORE, XPO respectfully asks that this Court enter judgment in its favor against Arbella and Nautilus in an amount sufficient to compensate XPO fairly and reasonably for all damages, plus interest, costs and attorneys' fees, and such other relief and remedies as may be appropriate under the circumstances.  In addition, XPO respectfully asks that this Court declare that Arbella and/or Nautilus owe XPO, its affiliates and all customers a duty to defend in the underlying litigation, Arbella and/or Nautilus are obligated to reimburse XPO, its affiliates and all customers for defense costs incurred defending against the underlying litigation and for the costs of prosecuting the present litigation; and Arbella and/or Nautilus have a duty to indemnify XPO, its affiliates and all customers for any judgment entered against XPO, its affiliates and all customers in the underlying litigation.

## COUNT IV
### (Estoppel – NuAlliance, Arbella, and Nautilus)

62. XPO repeats, reiterates and realleges each and every allegation set forth in the preceding Paragraphs and incorporates the same by reference.

63. NuAlliance made a promise or representation in the Certificate of Liability Insurance that XPO, its affiliates and all customers were to be included as an additional insured on the Arbella policy and Nautilus policy.

64. NuAlliance's promise or representation in the Certificate of Liability Insurance was or should have been reasonably expected to induce detrimental reliance by XPO.

65. NuAlliance is estopped from denying the promise or representation in the Certificate of Liability Insurance that XPO, its affiliates and all customers were an additional insured on the Arbella policy and Nautilus policy.

66. NuAlliance acted as the agent for Arbella in issuing the Certificate of Liability Insurance to XPO.

67. NuAlliance acted as the agent for Nautilus in issuing the Certificate of Liability Insurance to XPO.

68. Arbella and Nautilus are liable for the actions of its/their agent, NuAlliance, which acted with apparent or actual authority to bind its principals, Arbella and Nautilus.

69. Arbella and Nautilus are estopped from denying the promise or representation in the Certificate of Liability Insurance that XPO, its affiliates and all customers were an additional insured on the Arbella policy and Nautilus policy.

  WHEREFORE, XPO respectfully asks that this Court enter judgment in its favor against NuAlliance, Arbella, and Nautilus in an amount sufficient to compensate XPO fairly and reasonably for all damages, plus interest, costs and attorneys' fees, and such other relief and remedies as may be appropriate under the circumstances.

DATED at Portland, Maine this 13th day of August, 2021.

      /s/ Matthew T. Mehalic
Matthew T. Mehalic, Esquire – Bar No. 4162
Joshua D. Hadiaris, Esquire – Bar No. 4209
Attorneys Plaintiffs

Norman Hanson & DeTroy, LLC
Two Canal Plaza
P.O. Box 4600
Portland, ME   04112-4600
207.774.7000
mmehalic@nhdlaw.com
hadiarisservice@nhdlaw.com